IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA

MARTIN P. SHEEHAN,
Trustee for the Bankruptcy
Estate of Benjamin F. Warner, Sr.,

        Plaintiff-Appellant,

v.                     //    CIVIL ACTION NO. 1:11CV4
                            (Judge Keeley)

                            BANKRUPTCY NO. 10-888
                            ADV. PROC. NO. 10-102
                            (Judge Flatley)

THE MARRIAGE OF JULIE WARNER
n/k/a JULIE KNOTTS AND BENJAMIN
F. WARNER, SR.,

        Defendant-Appellee,

v.

JULIE KNOTTS,

        Respondent.

## ORDER AFFIRMING ORDER OF BANKRUPTCY COURT

The appellant, Martin P. Sheehan ("Trustee"), who serves as the Chapter 7 trustee for the bankruptcy estate of Benjamin F. Warner, Sr. ("Warner"), seeks to remove the divorce proceedings between Warner and his former wife, Julie Knotts ("Knotts"), from the Family Court of Monongalia County, West Virginia ("Family Court") to the Bankruptcy Court for this District. For the reasons that follow, the Court **AFFIRMS** the ruling of the Bankruptcy Court remanding the divorce proceedings to the Family Court, and **DISMISSES** this appeal **WITH PREJUDICE**.

## ORDER AFFIRMING ORDER OF BANKRUPTCY COURT

### I. PROCEDURAL BACKGROUND

Warner and Knotts separated on December 6, 2006. On September 10, 2008, the Family Court entered a bifurcated decree granting the parties a divorce. The case remains open, however, pending resolution of numerous issues, including the identification and division of the marital estate.

On August 2, 2010, the Trustee filed the instant adversary proceeding in the Bankruptcy Court, seeking removal of the divorce case on the ground that the Family Court's rulings could have the effect of determining and distributing assets properly belonging to Warner's bankruptcy estate. That same day, the Bankruptcy Court granted the Trustee's motion for a writ of certiorari to the Family Court.

Knotts opposed the removal. After a hearing, the Bankruptcy Court granted her motion to remand the case to the Family Court, holding that the domestic relations exception to federal jurisdiction prevented the exercise of the Bankruptcy Court's jurisdiction. The Trustee filed this appeal and requested that the Bankruptcy Court stay its remand order, which it did.

The Trustee claims that, with regard to cases having a federal jurisdictional basis in the Bankruptcy Code, the domestic relations

### ORDER AFFIRMING ORDER OF BANKRUPTCY COURT

exception cannot or should not operate. Knotts urges this Court to affirm the contrary ruling of the Bankruptcy Court. The parties have fully briefed the issue for the Court's consideration.

### II. ANALYSIS

The questions presented in this appeal are limited to, first, whether a domestic relations exception exists, either as a matter of jurisdiction or abstention, with regard to federal bankruptcy jurisdiction, and if so, whether the facts of this case fall within that exception. Supreme Court and Fourth Circuit precedent establishes that federal courts should decline to hear cases involving the intersection of family law and bankruptcy in certain circumstances, and careful consideration of the issues presented by the Trustee and Knotts suggests that such a course of action applies in this case.

### A. Governing Law: Federal Jurisdiction and Domestic Relations

The Trustee concedes that the domestic relations exception is well-established in federal jurisprudence, but correctly points out that the seminal cases affirming and exploring the rule involve controversies where federal jurisdiction otherwise would arise because of the diversity of the parties. In Ankenbrandt v.

### ORDER AFFIRMING ORDER OF BANKRUPTCY COURT

Richards, 504 U.S. 689 (1992), the Supreme Court clarified that the

principle of domestic relations exception first enunciated in

Barber v. Barber, 62 U.S. 582 (1858), does not rely on an absence

of jurisdiction over such matters in Article III of the

Constitution. Instead, the Court held, inferior federal courts lack

jurisdiction to entertain such actions because Congress did not

grant them such authority in the Judiciary Act of 1789 or

subsequent statutes. Richards, 504 U.S. at 698. Congressional

acquiescence to the exception, and principles of federalism, stare

decisis, and concerns of judicial economy persuaded the Court to

preserve the domestic relations exception, but, importantly, only

in "cases involving the issuance of a divorce, alimony, or child

custody decree." Id. at 704.[1]

A similar exception to federal jurisdiction arises in the

administration of decedents' estates. In Markham v. Allen, 326 U.S.

---

[1]The Court in Ankenbrandt itself held that the question of
whether a suit for tortious abuse, filed by a mother on behalf of
her children against their father and his companion, did not fall
within this narrow domestic relations exception. 504 U.S. at 704.
Nor was abstention appropriate because "no state proceeding was
pending," id. at 705 (citing Younger v. Harris, 401 U.S. 37
(1971)), and no "difficult questions of state law bearing on policy
problems" were presented. Id. (quoting Colorado River Water
Conservation Dist. v. United States, 424 U.S. 800, 815 (1976), and
citing Burford v. Sun Oil Co., 319 U.S. 315 (1943)).

## ORDER AFFIRMING ORDER OF BANKRUPTCY COURT

490 (1946), the Court had held that, like the domestic relations
exception, the probate exception arises from the limited grant of
authority of the Judiciary Act of 1789 and subsequent statutes. 326
U.S. at 494. Subsequently, and importantly in a bankruptcy case,
the Court addressed the "'probate exception,' kin to the domestic
relations exception, to otherwise proper federal jurisdiction," in
Marshall v. Marshall, 547 U.S. 293, 308 (2006)(citing inter alia
Markham)(on remand, In re Marshall, 600 F.3d 1037 (9th Cir. 2010),
cert. granted, 131 S.Ct. 63 (Mem.)(Sep. 28, 2010)).

Marshall sought to clarify and limit the scope of the probate
exception, just as the Court had achieved with regard to the
domestic relations exception in Ankenbrandt. Justice Ginsburg,
writing for the Court, held that "when one court is exercising in
rem jurisdiction over a res, a second court will not assume in rem
jurisdiction over the same res." Marshall, 547 U.S. at 311.

The probate exception "precludes federal courts from
endeavoring to dispose of property that is in the custody of a
state probate court. But it does not bar federal courts from
adjudicating matters outside those confines and otherwise within
federal jurisdiction." Id. at 311-12. Thus, claims for tortious
interference asserted as an adversary bankruptcy proceeding, which

## ORDER AFFIRMING ORDER OF BANKRUPTCY COURT

did not affect the probate or administration of an estate, fell outside the probate exception. Id. at 312.

Read together, Ankenbrandt and Marshall establish principles of jurisdiction applicable to the related domestic relations and probate exceptions. In both cases, the federal structure established by Congress reserves core questions of probate and marital issues to the state courts. The mere relationship of a cause of action to such proceedings, however, will not divest the federal courts of jurisdiction. So long as a federal court does not purport to usurp the core functions of the state tribunals in these areas, it should exercise jurisdiction absent a compelling reason to abstain.[2]

Although predating both Ankenbrandt and Marshall, the Fourth Circuit's opinion in Cole v. Cole, 633 F.2d 1083 (4th Cir. 1980), reinforces their principles. In Cole, a former husband sued his ex-wife for malicious prosecution, abuse of process, arson and conversion. Reversing a district court opinion that had dismissed the claims based on the domestic relations exception, Judge

---

[2] Because, as explained in Part II-B of this Order, the Trustee seeks to remove to the Bankruptcy Court a proceeding exclusively within the jurisdiction of the Family Court, this Court need not reach questions of prudential abstention.

## ORDER AFFIRMING ORDER OF BANKRUPTCY COURT

Murnaghan wrote that the exercise of federal jurisdiction was proper where the legal basis for the claims arose independently of the parties' former marital relation. "So long as diversity jurisdiction endures, federal courts cannot shirk the inconvenience of sometimes trading in wares from the foul rag-and-bone shop of the heart." Id. at 1089.

### B. Issues in the Family Court Proceeding and Trustee's Claims

According to the parties to this appeal, several issues remain unresolved in the divorce proceedings. Although the Family Court initially ordered alimony payments to Knotts, it later determined that her adultery barred such an award. Instead of ordering a repayment, however, it held that the money already paid over by Warner, and that which he would continue to pay, would be considered an advance payment to Knotts to be eventually offset against her equitable share of the marital estate.

Also at issue is the valuation of the estate. Under normal circumstances, West Virginia family courts value the marital estate as of the date of separation. W. Va. Code § 48-7-104. However, a present-day value may be used in certain circumstances where justice so requires. The Trustee contends that such an alternate date may be appropriate in this case because of the change in value

### ORDER AFFIRMING ORDER OF BANKRUPTCY COURT

of several business ventures in which Warner has an ownership interest.

In contrast, the Family Court has already resolved some issues. By its Bifurcated Divorce Order of June 18, 2010, it granted a divorce and, as noted, found that Knotts committed adultery. Nevertheless, distribution questions both major and trivial, as well as child custody disputes, remain open and pending in the Family Court.

The Trustee seeks to have the Bankruptcy Court, not the Family Court, determine a proper division of the marital assets, or at least the majority of them, with an eye towards the rights of the debtor and creditors in Warner's bankruptcy estate. He would also have the Bankruptcy Court determine the valuation date for the estate. While perhaps convenient for the Trustee and the creditors, such an exercise of jurisdiction over the res of the marital estate would violate the domestic relations exception as enunciated by the Supreme Court and the Fourth Circuit. The Bankruptcy Court could not afford the relief the Trustee seeks without encroaching on the exclusive jurisdictional territory of the Family Court, for the issues left to be settled will require determinations as to the

**ORDER AFFIRMING ORDER OF BANKRUPTCY COURT**

nature of the divorce itself, child support, and distribution of personal property as mundane as dishes and home furnishings.

Of course, the result reached by the Bankruptcy Court, which this Court affirms today, does not cut off the Trustee's rights to protect Warner's interests in property asserted to be part of the bankruptcy estate. As the Family Court itself recognized, the automatic bankruptcy stay may prevent final resolution of equitable distribution issues even if the divorce is remanded.

In this appeal, no party asks the Court to address the propriety of any relief from the stay. However, the Fourth Circuit has noted that a Bankruptcy Court may properly grant such relief and allow a family court to proceed with distribution in such situations. In re Robbins, 964 F.2d 342 (1992).

Even if the Family Court grants an equitable distribution, the Bankruptcy Court may still be asked to determine the treatment of any award under the Bankruptcy Code. See In re Lewis, 423 B.R. 742 (Bkrtcy.W.D.Mich. 2010). Alternatively, should the divorce proceedings remain stayed pending the bankruptcy case, any subsequent equitable distribution would nevertheless be non-dischargeable under 11 U.S.C. § 523(a)(15).

## ORDER AFFIRMING ORDER OF BANKRUPTCY COURT

In summary, although the Bankruptcy Court has the power to forestall the equitable distribution by virtue of its option to leave the automatic stay in place, it cannot assume the Family Court's obligation to make the distribution itself, or prevent such an adjudication once the stay no longer operates. Finally, the remand of the divorce does not prevent the Trustee from asserting the inchoate claims he describes in this appeal. Specifically, he claims that the bankruptcy estate may have a claim for fraudulent conveyance against Knotts based on the payments she received as an advance towards equitable distribution, if ultimately there are no marital assets to be divided. Should such a claim eventually arise, the Trustee may bring a separate adversary proceeding as he states in his appellate brief. Again, however, none of these issues are before this Court, the Bankruptcy Judge, or the Family Court, and thus have no substantial bearing on this Court's decision to affirm the order of remand.

### CONCLUSION

For the reasons stated above, the Court **AFFIRMS** the order of the Bankruptcy Court remanding this case to the Family Court of Monongalia County. The Court **REMANDS** the case to the Bankruptcy

**SHEEHAN v. MARRIAGE OF JULIE WARNER**          **1:11CV4**
**n/k/a/ JULIE KNOTTS AND BENJAMIN F.**
**WARNER, SR.**

<u>**ORDER AFFIRMING ORDER OF BANKRUPTCY COURT**</u>

Court, Hon. Patrick M. Flatley, Judge, for proceedings consistent

with this Order and **DISMISSES** this appeal **WITH PREJUDICE.**

    It is so **ORDERED.**

    The Court directs the Clerk to transmit copies of this Order

to counsel of record and to the Clerk of the United States

Bankruptcy Court for this District.

DATED: May 11, 2011.

                           /s/ Irene M. Keeley
                           IRENE M. KEELEY
                           UNITED STATES DISTRICT JUDGE